IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


ERPELDING V. SOUTHALL


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


SHAWN ERPELDING, AS NEXT FRIEND TO G. E., A MINOR CHILD,

APPELLANT,

V.

DIANE SOUTHALL, APPELLEE.


Filed July 14, 2026.    No. A-25-622.


Appeal from the District Court for Buffalo County: JOHN H. MARSH, Judge. Affirmed.

Shawn R. Erpelding, pro se.

Andrew W. Hoffmeister, Chief Deputy Buffalo County Attorney, for appellee.


RIEDMANN, Chief Judge, and MOORE and PIRTLE, Judges.

MOORE, Judge.

## INTRODUCTION

Shawn Erpelding appeals from the order of the district court for Buffalo County that denied his motion to quash Erpelding's child support and medical support arrearages, and his ongoing medical support, and which determined that Erpelding was subject to income withholding for purposes of collecting those balances. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

*Paternity Proceedings.*

In May 2012, Erpelding filed a complaint in the district court to establish paternity, custody, parenting time, and child support for his minor child with Diane Southall. In July, the court entered a temporary parenting plan granting primary physical custody to Southall, and in

- 1 -

August, the court ordered Erpelding to pay temporary child support of $225 per month. See *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015).

On July 15, 2013, the district court entered a final order in the paternity proceedings (the July 2013 final order). The court found that Erpelding was the father of the child and awarded custody to Southall, subject to Erpelding's specified parenting time. In addressing support for the child, the court noted evidence that the child was receiving Medicaid benefits from the State and that neither party had health insurance available through employment. The court ordered Erpelding to pay $379 per month in "child support." It also found Erpelding was "obligated to make a medical support payment in the amount of $62[] per month for the benefit of the State of Nebraska." Erpelding's total payment for both types of support ($441 per month) was to be made to the Nebraska Department of Health and Human Services (DHHS) child support payment center. The court stated that "should [Erpelding] be other than self-employed, [he] shall establish income withholding through his employer to meet the child support obligation."

Subsequently, Southall sent a letter to the district court, asking the court to "immediately stop all current and past child support." The court entered an order on December 3, 2013, suspending Erpelding's "child support obligation" as of that date (the December 2013 suspension order). The court stated that upon application by either Southall or the State, Erpelding's "child support obligation" could be reinstated. The court's December 2013 suspension order did not address Erpelding's obligation for medical support or any past due obligations for either child support or medical support. Erpelding did not appeal from the December suspension 2013 order or from the previous order for temporary child support. See *State v. Erpelding, supra*.

*Criminal Conviction for Nonsupport.*

Southall began receiving Aid to Dependent Children (ADC) assistance for her child with Erpelding through DHHS in August 2012, and child support was assigned to DHHS. See *State v. Erpelding, supra*. See, also, Neb. Rev. Stat. § 43-512.07 (Cum. Supp. 2024) (concerning assignment of support to DHHS). DHHS referred Erpelding's case to a support enforcement officer with the Buffalo County attorney's office. Ultimately, Erpelding was arrested and charged with four counts of criminal nonsupport pursuant to Neb. Rev. Stat. § 28-706 (Reissue 2008) for failing to pay the first 4 months of his temporary child support obligation. *State v. Erpelding, supra*. The State also charged Erpelding as a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2008). *State v. Erpelding, supra*. Following a jury trial, Erpelding was convicted of all four counts of criminal nonsupport. *Id.* Subsequently, the district court found that Erpelding was a habitual criminal and sentenced him to concurrent terms of 10 to 15 years' imprisonment on each count. *Id.* Erpelding appealed, and the Nebraska Supreme Court affirmed his convictions and sentences. *Id.* Erpelding subsequently filed a motion for postconviction relief, which was denied by the district court without a hearing. This court affirmed the district court's order in August 2018. *State v. Erpelding*, No. A-17-332, 2018 WL 3752164 (Neb. App. Aug. 7, 2018) (selected for posting to court website).

*Collection Efforts by State.*

Nebraska statutes provide certain techniques to enforce support orders, including administrative attachment. See Neb. Rev. Stat. § 43-3328 (Reissue 2016). See, also, Neb. Rev.

Stat. § 43-3333(1) (Reissue 2016) (concerning seizure of obligor's property and notice of arrearage in administrative attachment cases). The State sent Erpelding a notice of arrearage, dated April 4, 2025, notifying him pursuant to § 43-3333 that "official support payment records" indicated he was $12,018.78 delinquent in his child support and medical support payments. This amount was comprised of $1,674.15 in past due child support, plus $618.08 interest; and $8,680 in past due medical support, plus $1,046.55 interest. The notice also indicated Erpelding's ongoing medical support obligation of $62 per month. The notice informed Erpelding that any amounts past due that might accumulate after the notice would be included in enforcement actions and that his property may be seized without further notice if he did not respond or clear up the arrearage. The notice included information about Erpelding's right to request an administrative hearing and how to request such a hearing. The notice concluded by stating that an administrative hearing could not change an existing court order or the amount of past due support. Erpelding submitted a request for an administrative hearing to the DHHS Child Support Enforcement Unit.

Income withholding is also a technique used for the collection of "child, spousal, and medical support and monetary judgments." Neb. Rev. Stat. § 43-1702 (Reissue 2016). The Income Withholding for Child Support Act provides "a simplified and relatively automatic procedure for implementing income withholding in order to guarantee that child, spousal, and medical support obligations and monetary judgments are met when income is available for that purpose, to encourage voluntary withholding by obligors, and to facilitate the implementation of income withholding based on foreign support orders." *Id.* The State issued an income withholding for support notice concerning Erpelding, dated April 4, 2025, and directed it to the Nebraska Department of Corrections (DOC). The notice informed the DOC that the notice was "based on the support or withholding order from Nebraska" and that it was required to deduct $472 per month from Erpelding's income until further notice ($379 per month for past due child support, $62 per month for current cash medical support, and $31 per month for past due cash medical support).

*Erpelding's Motions.*

On May 12, 2025, Erpelding filed a motion to quash in the district court, seeking an order "quashing the p[u]rported support [ba]lance and revoking the income withholding in this case." Erpelding acknowledged receiving the notice of arrearage and a copy of the income withholding for support document, and he "dispute[d]" these documents, alleging, based on the court's December 2013 suspension order, that "he does not owe any child support, medical support, arrearages, or interest in this case."

On May 21, 2025, Erpelding filed a motion in the district court, seeking to stay "the current income wi[t]hholding for support in this case." Erpelding alleged that the income withholding "create[d] unnecessary financial burden." He stated that he earned $1.26 per day, 5 days a week, netting approximately $25 per month, and that "the current deduction of 60%" left him with $10 per month to purchase deodorant, toothpaste, razors, and other necessities. He asked the court for an order staying income withholding "until[] all litigation concerning the matter is concluded."

The district court heard Erpelding's motion to stay income withholding on June 25, 2025. An attorney appeared in person on behalf of the State; Erpelding appeared via video conference; Southall did not appear. Erpelding objected to the State's participation in the hearing. The court overruled his objection, noting that the State "is charged with enforcement of child support orders,"

which is "a fairly broad authority." The court heard arguments from Erpelding and the State, and it received exhibits submitted by Erpelding, including copies of Southall's request to suspend child support and the court's December 2013 suspension order, the notice of arrearage and Erpelding's request for an administrative hearing, and the notice of income withholding. The State offered a certified copy of the payment record of medical support due in this case, which the court received over Erpelding's objections. The court also took judicial notice of its July 2013 final order, which was marked as an exhibit and included in the record.

On June 25, 2025, after the hearing on Erpelding's motions, the State filed a motion seeking to reopen the matter and submit additional evidence concerning the State's administrative collection efforts. The State asserted that after the hearing, the attorney representing the State had reviewed the "Children Have a Right to Support" system (CHARTS) created by DHHS and observed a notation "prior to this date" indicating the State was not pursuing further administrative attachment of Erpelding's assets. The State attached a copy of a letter dated June 25 to Erpelding from a child support enforcement worker in response to his "letter received April 28, 2015" and informing him that the State "will not pursue Administrative Attachment at this time due to no account number listed and no response back from Correctional facility."

The district court heard the State's request to reopen evidence on July 17, 2025. Erpelding again appeared via video conference, and Southall did not appear. The court received three additional exhibits offered by the State over Erpelding's objections (the June 2025 letter to Erpelding indicating the State was not pursuing administrative attachment and two certified payment records concerning Erpelding's child support and medical support); it also received an affidavit offered by Erpelding.

On July 31, 2025, the district court entered an order ruling on Erpelding's motions. The Court found that Erpelding "is subject to income withholding pursuant to law including Neb. Rev. Stat. [§§] 43-1718 and 43-1718.02," and it overruled his motion to quash. In addressing Erpelding's motions, the court first observed that Erpelding had had "several prior opportunities to address his support obligations and [had] previously contested the validity of the order for support under other theories." Although the State had not raised the doctrine of claim preclusion in its arguments to the court, the court observed that "Erpelding's action may be barred under the doctrine of claim preclusion which bars not only those matters actually litigated, but also of matters which could have been litigated in the former proceeding." Next, the court found that the parties had had adequate opportunity to offer evidence and make arguments at the June 25 and July 17 hearings. It noted the payment records received into evidence, which showed that Erpelding owed a medical support balance to DHHS of $9,869.09, accruing at $62 per month, and that child support ceased accruing on November 1, 2013, consistent with the December 2013 suspension order. The court then stated that "[t]he plain language" of the December 2013 suspension order "suspends the child support order. It is silent as to any arrearages and does not address medical support." The court observed that Southall "would not have been the proper party to request a suspension of the medical support order as she was not the payee for that obligation."

Erpelding subsequently perfected the present appeal to this court.

ASSIGNMENTS OF ERROR

Erpelding assigns, reordered, that the district court erred in (1) allowing the State to participate in a case to which it was "not a real party," (2) receiving exhibits he was unable to "verify, challenge, or cross-examine prior to ruling," (3) overruling his motion to quash without a hearing, and (4) failing to "stay the income withholding." Brief for appellant at 5.

STANDARD OF REVIEW

When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *American Exch. Bank v. Topp*, 321 Neb. 409, 35 N.W.3d 411 (2026).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *McReynolds v. McReynolds*, 33 Neb. App. 733, 24 N.W.3d 906 (2025). A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Id.*

The determination of whether the procedures afforded to an individual comport with the constitutional requirements for procedural due process presents a question of law. *Hauxwell v. Middle Republican NRD*, 319 Neb. 1, 21 N.W.3d 34 (2025).

The meaning of the judgment is a question of law. *Ramaekers v. Creighton University*, 312 Neb. 248, 978 N.W.2d 298 (2022). When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions. *Id.*

ANALYSIS

*Participation by State.*

Erpelding assigns that the district court erred in allowing the State to participate in a case to which it was "not a real party." Brief for appellant at 5. The court overruled Erpelding's objection to the State's participation in the June 2025 hearing, noting that the State is charged with enforcement of child support orders, "a fairly broad authority." We agree that the county attorney had the authority to enforce the child support and medical support orders in this case.

The district court has issued support orders against Erpelding. Pursuant to the July 2013 final order, Erpelding was ordered to pay child support and medical support. Prior to that, he was ordered to pay temporary child support. See S*tate v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015). "Support order" means "any order, decree, or judgment for child, spousal, or medical support or for payment of any arrearage for such support issued by a court or agency of competent jurisdiction . . . whether for temporary or permanent support, whether interlocutory or final." Neb. Rev. Stat. § 43-1717 (Reissue 2016). A support order "operates as an assignment, to the State Disbursement Unit, of that portion of an obligor's income as will be sufficient to pay the amount ordered for child, spousal, or medical support and shall be binding on any existing or future employer or other payor of the obligor." Neb. Rev. Stat. § 43-1718 (Reissue 2016). And, "[t]he Title IV-D Division of the Department of Health and Human Services or its designee shall be responsible for administering income withholding." *Id.* Under Neb. Rev. Stat. § 43-512.03

(Reissue 2016), the county attorney has authority to, among other things, enforce child, spousal, and medical support orders by an action for income withholding, by other civil actions or administrative actions, citing the defendant for contempt, or filing a criminal complaint. And, pursuant to § 43-512.03(4), the State of Nebraska shall be a real party in interest in any action brought by or intervened in by a county attorney to enforce an order for child support. *House v. House*, 24 Neb. App. 595, 894 N.W.2d 362 (2017). Given the existing support order and order for income withholding, the district court did not err in overruling Erpelding's objection to the State's participation.

Erpelding's arguments are largely premised on his assertion that there is no support order "'in actual existence'" since entry of the December 2013 suspension order. Brief for appellant at 15. We have addressed Erpelding's arguments about the effect of the December 2013 suspension order on his support obligations below.

*Receipt of Exhibits.*

Erpelding assigns that the district court erred in receiving exhibits he was unable to "verify, challenge, or cross-examine prior to ruling." Brief for appellant at 5. He challenges the admission of exhibits 26 and 27 at the June 2025 hearing and exhibit 28 at the July 2025 hearing.

Exhibit 26 is a DHHS payment history report for the medical support owed by Erpelding, showing the judgment totals from July 1, 2013, through June 17, 2025 (the date of the report). Exhibit 27 is the copy of the July 2013 final order judicially noticed by the district court. Erpelding objected to the State's offer of exhibit 26 and the request to take judicial notice of exhibit 27, arguing that "under due process and anything else, I should be able to inspect anything . . . that they present . . . and in this setting [hearing via video conference] . . . I'm unable to do that."

On appeal, Erpelding argues that the district court should have granted a continuance and that exhibits 26 and 27 should have been mailed to him for inspection. Erpelding did not request a continuance and has waived any error in that regard. One cannot silently tolerate error, gamble on a favorable result, and then complain that one guessed wrong. *132 Ventures v. Active Spine Physical Therapy*, 318 Neb. 64, 13 N.W.3d 441 (2024).

Erpelding also notes with respect to exhibit 26 that the "Start" and "Stop" dates on the first page of the exhibit have been redacted, and he argues that while it may be a certified document, it is "not original or authentic," that it shows medical support due of $62 per month "no longer authorized by Exhibit 27 after December 3, 2013," and that it is "fraudulent and misleading." Brief for appellant at 18. While there is no explanation in the record for the redaction on the first page of exhibit 26, a review of the document shows that it contains a history of Erpelding's medical support obligation from July 2013 through June 2025, including payments, arrearages, and interest. It also contains "CERTIFICATION" that it was a "true copy of the official record of support order payments, balances, and arrearages maintained by the IV-D division, pursuant to Neb Rev Stat § 43-3342.01." It was electronically signed by a "CSE Payment Records Specialist" on behalf of "Margaret Ewing, IV-D Director." The medical support payment history report was properly authenticated, and the district court did not err when it received the report into evidence. See Neb. Rev. Stat. § 43-3342.01 (Reissue 2016). See, also, *House v. House*, 24 Neb. App. 595, 894 N.W.2d 362 (2017) (finding DHHS payment history report received in civil contempt action was properly authenticated).

Erpelding does not appear to dispute that exhibit 27 is a copy of the district court's July 2013 final order, and the court did not err in taking judicial notice and including the order in the bill of exceptions. See *State ex rel. Counsel for Dis. v. Jorgenson*, 302 Neb. 188, 922 N.W.2d 753 (2019) (court has right to examine its own records and take judicial notice of its own proceedings and judgments in former action). See, also, *Trausch v. Hagemeier*, 313 Neb. 538, 985 N.W.2d 402 (2023) (papers requested to be judicially noticed must be marked, identified, and made part of bill of exceptions).

Turning to exhibit 28, Erpelding made a hearsay objection to that exhibit (the letter indicating the State was not pursuing administrative attachment) at the July 2025 hearing. He also argued that "the letter is fraudulent because it attempts to mislead the court to believe that no funds have been garnished from me when that's not the case," and he expressed his belief that the prison would continue to "garnish [his] funds until the income withholding is revoked." Erpelding asserted that he never received the letter directly from the child support enforcement worker and that he only received it from the State's attorney and the district court in connection with the State's motion to reopen evidence. Erpelding makes similar arguments on appeal. His arguments are grounded in a misunderstanding of the different methods of collection that can be used by the State, as well as in his belief that the December 2013 order suspended not only his ongoing child support obligation, but also his obligation to pay ongoing medical support and any arrearages for past due child support and past due medical support. See, § 43-3328; § 43-1702. We see no error in the district court's admission of exhibit 28 in connection with the State's motion to reopen evidence. We have addressed Erpelding's arguments about the December 2013 suspension order below.

*Motion to Quash.*

Erpelding assigns that the district court erred in overruling his motion to quash without a hearing. At the July 2025 hearing on the State's motion to reopen evidence, there was some debate as to whether the June 2025 hearing had pertained to both of Erpelding's motions or just his motion to stay. The court asked Erpelding if there was any further evidence he would offer toward the motion to quash, and Erpelding responded, "I have all those exhibits . . . A, B, C, D, E" (all of which had been offered by Erpelding and received by the court at the June 2025 hearing). The court stated, "I'm going to look back [at the June 2025 hearing] and see if we've covered that [the motion to quash]. If we did not cover the motion to quash, we'll set up a hearing in the near future." In its July 2025 order, the court declined further hearing and overruled Erpelding's motion to quash.

Erpelding's argument both before the district court and on appeal with respect to his motion to quash is that any balances he allegedly owes for child support arrearages, medical support arrearages, or ongoing medical support are invalid and should be quashed because all his support obligations were suspended pursuant to the December 2013 suspension order. Erpelding's arguments require us to consider the meaning of the July 2013 final order and the December 2013 suspension order. The court received the July 2013 final order into evidence and took judicial notice of the December 2013 suspension order at the June 2025 hearing. At the July 2025 hearing, Erpelding did not assert that he had specific evidence to offer in support of the motion to quash other than that previously received by the court. The court clearly considered the meaning of both

orders in its analysis of Erpelding's motion to quash, and we find no error in the court's failure to schedule an additional hearing on that motion.

Turning to the district court's interpretation of the July 2013 final order and the December 2013 suspension order, we note that a judgment's meaning is determined, as a matter of law, by the contents of the judgment in question. *Meiergerd v. Qatalyst Corp.*, 316 Neb. 831, 7 N.W.3d 636 (2024). Unless the language used in a judgment is ambiguous, the effect of the judgment must be declared in the light of the literal meaning of the language used. *Id.* Ambiguity in a judgment exists when a word, phrase, or provision therein has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id.* If the language of a judgment is ambiguous, there is room for construction. *Id.* In ascertaining the meaning of an ambiguous judgment, resort may be had to the entire record. *Id.* Doubtful or ambiguous judgments are to have a reasonable intendment to do justice and avoid wrong. *Id.* See, also, *Ramaekers v. Creighton University*, 312 Neb. 248, 978 N.W.2d 298 (2022) (these principles also apply to final orders).

In the July 2013 final order, the district court determined the parties' earning capacities, noted that the child was receiving Medicaid benefits from the State, and noted that neither parent had health insurance for the child's benefit through employment. The court ordered Erpelding to pay "child support" of $379 per month and "medical support" of $62 per month. And, the court ordered Erpelding to establish income withholding if he had an employer other than himself. Southall subsequently asked the court to stop "all current and past child support." In the December 2013 suspension order, the court noted Southall's request to suspend Erpelding's "child support obligation." The court granted that request and suspended Erpelding's "child support obligation" as of the date of the order. The order did not address medical support or Erpelding's arrearages for either child support or medical support.

Erpelding interprets the December 2013 suspension order as suspending not just his obligation for ongoing child support, but also his obligation for ongoing medical support and any past due obligation for either child support or medical support. In support of his interpretation, Erpelding points to the definitions of "[s]upport" found in the License Suspension Act and in the criminal nonsupport statute. See Neb. Rev. Stat. § 43-3313 (Reissue 2016) and Neb. Rev. Stat. § 28-706(3) (Reissue 2016). The potential suspension of a professional, occupational, or recreational license or a motor vehicle operator's license for failure to pay child, spousal, and medical support is another technique the State can use to enforce support orders. See Neb. Rev. Stat. § 43-3302 (Reissue 2016). License suspension was not the collection technique used in this case, and this is not a criminal proceeding.

The State did pursue collection through income withholding. The Income Withholding for Child Support Act defines "[c]hild support" to mean "support for one or more children." Neb. Rev. Stat. § 43-1705 (Reissue 2016). See, also, Neb. Rev. Stat. § 43-1716 (Reissue 2016) (defining "[s]upport" to mean "providing of necessary shelter, food, clothing, care, medical support, medical attention, education expenses, funeral expenses, or any other reasonable and necessary expense"). "Medical support" is defined to include "all expenses associated with the birth of a child, cash medical support as defined in section 42-369, health care coverage as defined in section 44-3,144, and medical and hospital insurance coverage or membership in a health maintenance organization or preferred provider organization." See, Neb. Rev. Stat. § 43-512 (Cum. Supp. 2024); Neb. Rev. Stat. § 43-1712.01 (Reissue 2016).

Child support and medical support are separate obligations. A review of the July 2013 final order shows that Erpelding was ordered to pay child support of $379 per month and medical support of $62 per month. The December 2013 suspension order, suspended Erpelding's obligation to make ongoing "child support" payments of $379 per month. Although Southall also asked the court to suspend Erpelding's "past" child support, the court appropriately did not grant, and could not have granted, that portion of Southall's request. See *Gress v. Gress*, 257 Neb. 112, 596 N.W.2d 8 (1999) (past-due child support arrearage is already accrued and vested, and court may not forgive or modify past-due child support). As to Erpelding's obligations for ongoing medical support and his obligation for any medical support arrearages, the district court correctly observed that Southall would not have been the proper party to request a suspension of the medical support order as she was not the payee for that obligation. The court did not err in overruling Erpelding's motion to quash.

*Failure to Stay Income Withholding.*

Erpelding assigns that the district court erred in failing to "stay the income withholding." Brief for appellant at 5. In his motion to stay, Erpelding referenced his motion to quash and alleged that he had "made a prima facie [case] disputing the arrearages as shown and the lack of a past or current support order." He also alleged that "[t]he income withholding creates unnecessary financial burden." He asked the court to stay the income withholding "until all litigation concerning the matter is concluded."

In its July 31, 2025, order, the district court's only statement concerning the motion to stay is its finding that "Erpelding is subject to income withholding pursuant to law including Neb. Rev. Stat. Sections 43-1718 and 43-1718.02." We agree that Erpelding is subject to income withholding. In the July 2013 final order, the district court ordered income withholding if Erpelding was "other than self-employed." We also note that by law, support orders issued after 1991 are subject to income withholding. See Neb. Rev. Stat. § 42-1718.01 (Reissue 2016) and Neb. Rev. Stat. § 43-1718.02 (Reissue 2016).

To the extent Erpelding's arguments in support of this assignment of error are based on his claim that all his support obligations, including those for past due child support and past due medical support, were suspended by the December 2013 suspension order, we addressed and rejected that claim above.

Both Erpelding and the State cite Neb. Rev. Stat. § 43-1727 (Reissue 2016), which provides for modification of withholding notice in certain circumstances, including by court after hearing for good cause. Erpelding did not actually seek modification of an income withholding notice in his motion to stay. Although he included information about his current earnings and asserted that the income withholding "create[d] unnecessary financial burden," the relief requested by Erpelding was to ask the court for an order "staying the income withholding until all litigation concerning the matter is concluded." It is not clear what Erpelding meant by "all litigation," but he did reference his motion to quash his alleged support balance, which was grounded in the assertion that the December 2013 suspension order suspended all his support obligations. As discussed above, the December 2013 order only suspended Erpelding's ongoing child support obligation from the date of that order and did not provide a basis to quash Erpelding's obligation for ongoing medical support, past due medical support, and past due child support. Based on the

record before us we find no error in the court's treatment of Erpelding's motion to stay income withholding.

## CONCLUSION

We find no error in the district court's overruling Erpelding's objections to the State's participation in the hearings on the motion to stay and motion to quash or to its admission of certain exhibits. For the reasons stated above, we affirm the district court's July 2025 order declining further hearing and overruling the motion to quash, and the court's finding that Erpelding is subject to income withholding.

AFFIRMED.